# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY J. HUDSON,** | ) | **CASE NO. 4:17CV1885** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE PATRICIA GAUGHAN** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE** |
| **BRIGHAM SLOAN,** | ) | **JONATHAN D. GREENBERG** |
| **Warden** | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| **Respondent.** | ) | **(Doc. Nos 1, 11, 12) and ORDER** |
| | ) | **(Doc. Nos.  3, 4, 6, 10, 13, 17, 18)** |

     This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Anthony J. Hudson ("Hudson" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241.[1]  Hudson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Hudson*, Trumbull County Court of Common Pleas Case No. 2011-CR-0073.

     Also pending are the following seven motions filed by Hudson: (1) "Motion for release on bond" (Doc. No. 3); (2) "Motion to stay State Court proceedings until Federal Court Habeas Corpus Proceedings Adjudicated" (Doc. No. 4); (3) "Motion for Bail, Evidentiary Hearing, and Appointment of Counsel"(Doc. No. 6); (4) "Renewed Motion for Bond or Bail Evidentiary Hearing" (Doc. No. 10); (5) "Motion for Evidentiary Hearing" (Doc. No. 13); (6) "Motion to Amend Petition in Interests of Justice" (Doc. No. 17);  and (8) "Motion for Court to Judicially

---

[1] Hudson filed his Petition pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  He asserts § 2241 is the appropriate provision because he "is imprisoned on something other than a State Court judgment."  (Doc. No. 12 at 1, 7.)  As discussed in detail *infra*, it is recommended the Court reject this argument.  Rather, it is recommended the Court find Hudson is "in custody pursuant to a state court judgment" and, therefore, this action is governed by § 2254.

Notice Petitioner's Continued Imprisonment Notwithstanding *Gonzales II* Denies Hudson's

Federal Right of Liberty of 2/21/17" (Doc. No. 18.)

    For the following reasons, each of the above Motions (Doc. Nos.  3, 4, 6, 10, 13, 17, 18)

is DENIED.  In addition, the undersigned recommends the Petition be DISMISSED.

## I.  Summary of Facts

    In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Hudson's conviction as follows:

> {¶ 2} William Felt Jr. testified that he was a member of the TAG task force and is
> an Ashtabula City Police Officer. Felt explained that he initially drove a confidential
> source to a home in Warren Township to purchase drugs. Thereafter, a warrant was
> obtained, [footnote omitted] and on November 13, 2006, the Trumbull, Ashtabula,
> and Geauga County "TAG" task force executed a search warrant at the home.  The
> only person in the home at the time was Michael Hudson, who is appellant's brother.
>
> {¶ 3} Felt was the photographer and the task force's scribe when the warrant was
> executed.  He photographed and secured documents with the name Michael Hudson
> on them and other documents with Anthony Hudson's name on them.
>
> {¶ 4} Felt photographed a receipt found in the kitchen with Michael's name on it
> with his address listed as the address of the home being searched.  Felt also secured
> a CD case with white powder lines and residue on it.  The officers also found a scale
> with a white residue on it, baking soda, a protein powder used for "cutting" cocaine,
> and a frying pan with white crusty residue, suspected to be cocaine, in the kitchen.
> Felt's photographs of these items were introduced at trial. They also found a baggie
> containing marijuana in the kitchen.
>
> {¶ 5} Felt confirmed that the first floor bedroom was padlocked closed, and the
> officers had to use force to open it.  TAG task force members located documents in
> the locked bedroom containing the name Michael Hudson as well as documents with
> Anthony's name on them.  They found a pawn receipt with Michael's name on it in
> the padlocked bedroom along with a residential lease agreement listing Anthony

Hudson as the lessee of this property.  Felt also photographed an Ohio identification card issued to Anthony and a Warren utility receipt with Anthony's name on it in this locked bedroom.

{¶ 6} The task force also found a large quantity of crack cocaine on a television stand in the locked bedroom.  This was the only bedroom in the home that had the door padlocked closed.

{¶ 7} Ten to fifteen minutes after the task force arrived at the home, Major Thomas Stewart Sr. saw Anthony drive past the home in a beige Cadillac.  Stewart pulled Anthony over for driving with a suspended license.  The car was registered in Michael's name.  Stewart secured a small bag of marijuana from Anthony and a set of keys, which contained the key to the padlock for the locked bedroom.  This was the only key the officers located to the padlocked bedroom.

{¶ 8} Detective Tackett was the lead detective in this case and was also a TAG task force member.  Tackett testified that it has been increasingly difficult to secure drug traffickers' homes and cars via forfeiture because there is a tendency for offenders to put valuables in another's name to avoid forfeiture.  Tackett explained that Anthony was known to use his brother's name as an alias.

*State v. Hudson*, 2018 WL 417581 at * 1-2 (Ohio 11th App. Dist. Jan. 16, 2018).

## II. Procedural History

**A.    Trial Court Proceedings**

In February 2011, a Trumbull County Grand Jury charged Hudson with one count of possession of cocaine, a first degree felony, in violation of Ohio Rev. Code §§ 2925.11(A) & (C)(4)(e).[2]  (Doc. No. 11-1, Exh. 1.)  The indictment specified "the amount of the drug involved equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine."  (*Id.*)  Hudson pled not guilty.  (Doc. No. 11-1, Exh. 2.)

On November 2, 2011, Hudson filed a motion to suppress, arguing the affidavit supporting the search warrant of the residence in question was not sufficient to establish

---

[2] The record reflects Hudson was secretly indicted in May 2009 but was not located until 2011. (Doc. No. 11-1, Exhs. 1, 21.)

probable cause.  (Doc. No. 11-1, Exh. 3.)  The state trial court granted the motion on December 17, 2012, and the State appealed.[3]  (Doc. No. 11-1, Exhs. 4, 5.)  On November 12, 2013, the Ohio Court of Appeals for the Eleventh District ("state appellate court") reversed and remanded. (Doc. No. 11-1, Exh. 6.)  Hudson appealed and the State cross-appealed.  (Doc. No. 11-1, Exhs. 7, 8.)  On April 23, 2014, the Supreme Court of Ohio declined to accept jurisdiction of either the appeal or cross-appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 11-1, Exh. 9.)

On remand to the state trial court, the State moved to amend the indictment to "correct the language in the indictment regarding the weight of the crack cocaine to comport with the statutory language."  (Doc. No. 11-1, Exh. 10.)  Specifically, the State requested the indictment be amended "to read 'and that the amount of the drug involved equals or exceeds twenty seven [as opposed to twenty five] grams but is less than one hundred grams of Crack Cocaine."  (*Id.*)

Jury trial commenced on July 14, 2014.  (Doc. No. 11-1, Exh. 26.)  On July 15, 2014, the jury found Hudson guilty as charged.  (Doc. No. 11-1, Exh. 11.)  Thereafter, on September 23, 2014, Hudson was sentenced to a mandatory prison term of ten (10) years.  (Doc. No. 11-1, Exh. 12.)

## B.    Direct Appeal

On October 22, 2014, Hudson, through new counsel, filed a Notice of Appeal with the state appellate court.  (Doc. No. 11-1, Exh. 13.)  In his appellate brief, Hudson raised the following assignments of error:

---

[3] The State filed a Certification of Prosecuting Attorney pursuant to Ohio Crim. R. 12(K), in which it asserted that "the ruling on Defendant's Motion to Suppress has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed."  (Doc. No. 11-1, Exh. 5.)

4

I.      Anthony Hudson's first-degree felony conviction for possession of 27 grams or more but less than 100 grams of cocaine was not supported by sufficient evidence.  His first-degree felony conviction therefore violates his right to due process.  Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.

II.     The trial court erred when it denied Mr. Hudson's Crim. R. 29(A) motion for acquittal because the conviction is not supported by sufficient evidence.  Mr. Hudson's conviction for possession of cocaine therefore violates his rights to due process.  Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.

III.    Anthony Hudson's conviction for possession of cocaine is against the manifest weight of the evidence, in violation of Mr. Hudson's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.

(Doc. No. 11-1, Exh. 14.)  The State filed a brief in response.  (Doc. No. 11-1, Exh. 15.)

On May 23, 2016, the state appellate court issued a Judgment Entry, staying Hudson's appeal "pending further order of this court."  (Doc. No. 11-1, Exh. 18.)  The state appellate court noted the Ohio Supreme Court had accepted a certified conflict in *State v. Gonzales*, Sup. Ct. Nos. 2015-0384 and 2015-0385 and stated "the resolution of this appeal will be determined, in part, by the Supreme Court's decision in *Gonzales*."  (*Id.*)

On January 17, 2017, the state appellate court issued a Judgment Entry, indicating the Ohio Supreme Court had recently issued its decision in *State v. Gonzales*, 150 Ohio St.3d 261 (2016) (hereinafter "*Gonzales I*") and lifting the stay. (Doc. No. 11-1, Exh. 19.)  In *Gonzales I*, the Supreme Court held that "in prosecuting cocaine-possession offenses under R.C. 2925.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold." *Gonzales*, 150 Ohio St.3d at 269.

On February 21, 2017, the state appellate court issued an Opinion affirming in part,

5

reversing in part, and remanding for further proceedings.  (Doc. No. 11-1, Exh. 20.)  Of

particular relevance herein, the state appellate court held as follows:

> {¶ 13} First, Anthony alleges that his first-degree felony conviction was based on insufficient evidence.  He argues that the state must prove the quantity of the pure cocaine in the crack cocaine in his possession in order to secure an enhanced conviction.  He alleges that the evidence at trial only supports a conviction for a fifth-degree felony possession in light of the state's failure to prove the actual quantity of pure cocaine in his possession.  We agree.

> {¶ 14} The state correctly points out that Anthony did not raise this issue at trial either by way of objection or in his motion for acquittal.  Thus, we review this issue for plain error.  *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002–Ohio–68, 759 N.E.2d 1240 (2002). Notice of plain error should only occur under exceptional circumstances and in order to prevent a miscarriage of justice.  *Id*. at paragraph three of the syllabus.  "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise."  *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

> {¶ 15} R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

> {¶ 16} R.C. 2925.11(C)(4)(e) states: "Whoever violates division (A) of this section is guilty of one of the following: * * * (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows: * * * (e) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."  (Emphasis added.)

> {¶ 17} In Anthony's case, the state established via the testimony of a forensic chemist, Jennifer Acurio, that crack cocaine is a compound.  She confirmed that the amount of the drug in Anthony's possession, i.e., crack cocaine, weighed more than 27 grams.  Acurio confirmed that the crack cocaine weighed 28.97 grams when she first weighed it in June 2014.  Acurio's predecessor weighed and tested the same substance, and it weighed a few grams more in December of 2006.  She explained that crack cocaine is a moisture compound and that it lost moisture weight during the eight years that it was in storage.

> {¶ 18} Acurio stated the following on cross-examination:

{¶ 19} "Q. [D]o you test other substances within that material to determine what other compounds are used to help create crack cocaine?

{¶ 20} "A. No, we don't.

{¶ 21} "* **

{¶ 22} "A. * * * Once cocaine is present, I don't identify anything else that is in the mixture.

{¶ 23} "* * *

{¶ 24} "Q. So you wouldn't be able to determine, would you, if there's muscle feeder in that crack cocaine?

{¶ 25} "A. No * * *.

{¶ 26} "Q. * * * could you tell if there was Baking Soda in crack cocaine?

{¶ 27} "A. No, I could not.

{¶ 28} "Q. * * * why not?

{¶ 29} "A. The instrumentation that we use, we don't identify other compounds that are present.  And based on the law, we don't do any kind of quantification to show how much the cocaine is present.

{¶ 30} "Q. * * * It's all just considered cocaine?

{¶ 31} "A. Correct.

{¶ 32} "Q. So if you, if your or somebody wanted to, you could still that down further and see how much is cocaine and how much is extraneous matters?

{¶ 33} "A. It could be quantified.

{¶ 34} "* * *

{¶ 35} "Q. So we will never know how much actual cocaine is in that package; correct?

7

{¶ 36} "A. That's correct."

{¶ 37} Felt's testimony confirmed that he found baking soda at the home that day and explained that it is used "as a chemical additive to powder cocaine.  And that is how crack is made."  Felt also explained the significance of the protein additive used by weightlifters found in the home, stating "[i]t's added to raw cocaine before it's cooked into crack.  And what it does is increases the volume of the original product.  It's a cutting agent.  You essentially turn a specific quantity of powder cocaine, add a corresponding amount of a cutting agent, now you've doubled the amount of cocaine which you then can turn more profit * * *."

{¶ 38} Anthony asserts that a plain reading of R.C. 2925.11(C)(4)(e) requires the state to establish the weight of the pure cocaine in the crack cocaine in his possession via a scientific analysis of the entire substance.  He directs our attention to *State v. Gonzales*, 6th Dist. Wood No. WD–13–086, 2015–Ohio–461, ¶ 47, that recently held: "the state, in prosecuting cocaine offenses under R.C. 2925.11(C)(4)(a) through (f), must prove that the weight of the actual cocaine possessed by the defendant met the statutory threshold. * * * Because the state failed to introduce evidence as to the purity or weight of the cocaine in this case, we find that appellant's penalty enhancement under R.C. 2925.11(C)(4)(f) must be reversed and vacated."  (Emphasis sic.)

{¶ 39} After certifying a conflict on this precise issue, the Supreme Court very recently affirmed the *Gonzales* decision, holding: "Given the unambiguous language of the statute, we * * * hold that in prosecuting cocaine-possession offenses under R.C. 29295.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold."  *State v. Gonzales*, 2016–Ohio–8319, ––– N.E.3d ––––, ¶ 22.

**{¶ 40} Thus, because R.C. 2925.11(C)(4)(e) is unambiguous, we reverse and vacate Anthony's penalty enhancement pursuant to R.C. 2925.11(C)(4)(e), because the state failed to establish the weight "of cocaine" excluding the amount of filler materials.  On remand, the trial court shall resentence him to the lowest level of the offense, a fifth-degree felony under R.C. 2925.11(C)(4)(a)**.  *Gonzales, supra*, at ¶ 18 (explaining that possession of any amount of cocaine is a fifth-degree felony, and holding that in order to be guilty of a higher degree felony, the statute requires evidence that an offender possesses a certain amount "of cocaine," which does not include any additives or filler materials.)

*State v. Hudson*, 2017 WL 685122 at * 2-4 (Ohio App. 11th Dist. Feb. 21, 2017) (emphasis added).  In the decision, the state appellate court also considered and rejected Hudson's second

8

and third assignments of error.  (*Id*.)

Three days later, on February 24, 2017, the State filed a "Motion for Stay and Leave to File Application for Reconsideration."  (Doc. No. 11-1, Exh. 21.)  Therein, the State noted the "Wood County Office of the Prosecuting Attorney has filed a S.Ct. Pract. R. 18.02 Motion for Reconsideration with the Ohio Supreme Court in the *Gonzales* case."  (*Id*.)  The State argued "if the Ohio Supreme Court agrees to reconsider its decision, and ultimately reverses its prior decision, the State would be prejudiced as it would be precluded from re-resentencing Appellant."  (*Id*.)  Thus, the State asked the state appellate court to stay its order remanding the case for re-sentencing until such time as the Ohio Supreme Court decided the pending motion for reconsideration in *Gonzales*.  (*Id*.)  The State also asked the state appellate court to allow it additional time to file a motion for reconsideration in that court in the event the *Gonzales* motion for reconsideration was granted.  (*Id*.)

Hudson, through counsel, opposed the State's motion.  (Doc. No. 11-1, Exh. 22.)  He argued "the State's request for a stay of this Court's decision is based solely upon speculation regarding the State's motion for reconsideration in *Gonzales*."  (*Id*.)  Hudson asserted "because *Gonzales* remains binding in this case, and because Mr. Hudson is subject to immediate release, granting the State's Motion to Stay this Court's decision would improperly prejudice Mr. Hudson based upon the mere possibility that the now-binding case law might change at some point in the future."  (*Id*.)

On March 1, 2017, the state appellate court granted a temporary stay of its February 21, 2017 judgment.  (Doc. No. 11-1, Exh. 23.)  The court also granted the State's motion to extend the time to file an application for reconsideration if the Ohio Supreme Court ultimately granted

9

the motion for reconsideration in *Gonzales*.[4] (*Id.*)

Shortly thereafter, on March 6, 2017, the State filed an Application for Reconsideration in the state appellate court. (Doc. No. 11-1, Exh. 24.) Therein, the State explained that, on March 6, 2017, the Supreme Court of Ohio, issued its decision in *State v. Gonzales*, 150 Ohio St.3d 276 (2017) (hereinafter "*Gonzales II*"). In that case, the Supreme Court of Ohio reversed its prior decision in *Gonzales I,* and held "the applicable offense level for cocaine possession under R.C. 2925.11(C)(4) is determined by the total weight of the drug involved, including any fillers that are part of the usable drug." *Gonzales II*, 150 Ohio St.3d at 281-282. In light of this ruling, the State asked the state appellate court to "reconsider its decision in the instant matter as the opinion of the court was based upon *Gonzales I*, which is no longer 'good law' as a result of *Gonzales II*." (Doc. No. 11-1, Exh. 24.)

On January 3, 2018, the state appellate court granted the State's Application for Reconsideration, finding "[i]n light of the about-face by the Supreme Court in *Gonzales* and the timely raising of this issue by the state, we grant the state's application for reconsideration" and "vacate our prior decision." (Doc. No. 14-1.)

Shortly thereafter, on January 16, 2018, the state appellate court issued a new opinion,

---

[4] On that same date, the State filed a Motion to Continue Sentencing Hearing in the state trial court. (Doc. No. 11-1, Exh. 25.) The State noted the trial court had scheduled Hudson's re-entencing hearing for March 2, 2017. (*Id.*) The State explained it had filed a motion for stay in the state appellate court based on the *Gonzales* motion for reconsideration and indicated "the State believes that this Court is divested of jurisdiction pending the appellate court's ruling on the motion for stay." (*Id.*) The docket reflects that, as of the date of this Opinion, the state trial court has not ruled on the State's Motion to Continue Sentencing Hearing. However, the Court notes that, on the docket sheet, the sentencing hearing is marked as "not needed." (Doc. No. 11-1, Exh. 26.) It is indisputed Hudson was not re-sentenced by the state trial court.

10

affirming Hudson's conviction and sentence.  (Doc. No. 16-1.)  Therein, the state appellate court

found as follows:

> {¶ 38} Anthony asserts that a plain reading of R.C. 2925.11(C)(4)(e) requires the
> state to establish the weight of the pure cocaine in the crack cocaine in his possession
> via a scientific analysis of the entire substance.  He directs our attention to *State v.
> Gonzales*, 6th Dist. Wood No. WD-13-086, 2015-Ohio-461, 2015 WL 502263, ¶ 47,
> that held: "the state, in prosecuting cocaine offenses under R.C. 2925.11(C)(4)(a)
> through (f), must prove that the weight of the *actual cocaine* possessed by the
> defendant met the statutory threshold. * * * Because the state failed to introduce
> evidence as to the purity or weight of the cocaine in this case, we find that appellant's
> penalty enhancement under R.C. 2925.11(C)(4)(f) must be reversed and vacated."
> (Emphasis sic.)
>
> {¶ 39} After certifying a conflict on this precise issue, the Supreme Court affirmed
> the *Gonzales* decision, holding: "Given the unambiguous language of the statute, we
> * * * hold that in prosecuting cocaine-possession offenses under R.C.
> 2925.11(C)(4)(b) through (f) involving mixed substances, the state must prove that
> the weight of the actual cocaine, excluding the weight of any filler materials, meets
> the statutory threshold."  *State v. Gonzales*, 150 Ohio St.3d. 261, 2016-Ohio-8319,
> 81 N.E.3d 405, ¶ 22, "*Gonzales I*".  Thereafter, however, the Supreme Court granted
> the state's application for reconsideration in *Gonzales I*, vacated its decision, and
> concluded the opposite in "*Gonzales II." State v. Gonzales*, 150 Ohio St.3d 276,
> 2017-Ohio-777, 81 N.E.3d 419, ¶ 18.
>
> {¶ 40} Like *Gonzales I, Gonzales II* holds that R.C. 2925.11(C)(4)(e) is
> unambiguous. But unlike *Gonzales I, Gonzales II* concludes the statute
> unambiguously includes the weight of the actual cocaine along with any filler
> materials to determine the appropriate penalty under the statute.  *Id*. at ¶ 12–14.
>
> {¶ 41} As a court of inferior jurisdiction, we must follow the Ohio Supreme Court's
> decisions.  *State v. Ryan*, 10th Dist. Franklin No. 08AP-481, 2009-Ohio-3235, 2009
> WL 1911863, ¶ 48; *Rollins v. State*, 8th Dist. Cuyahoga Nos. 96192-96194,
> 2011-Ohio-3264, 2011 WL 2568223, ¶ 22. Thus, consistent with *Gonzales II*,
> Anthony's first assigned error lacks merit and is overruled.

*State v. Hudson*, 2018 WL 417581 at * 3-4 (Ohio App. 11th Dist. Jan 16, 2018).  In addition,

the state appellate court again considered and rejected Hudson's second and third assignments

of error.  (*Id*.)

    As of the date of this Order, it does not appear Hudson appealed the state appellate

11

court's January 16, 2018 decision to the Supreme Court of Ohio.

## C.    Post-Conviction Filings

Meanwhile, on April 5, 2017, Hudson filed a "Petition for Habeas Corpus/and Complaint for Writ of Mandamus" in the state appellate court.[5]  (Doc. No. 20-1, Exh. 1.) Shortly thereafter, on April 12, 2017, he filed an "Amended Petition for Habeas Corpus/and Complaint for Writ of Mandamus and Peremptory Writ on Failure to Answer."  (Doc. No. 20-1, Exh. 2.)  In his Amended Petition/Complaint for Writ of Mandamus, Hudson raises the following ground:

> [B]ecause the mandate of this Court requires Mr. Hudson to be sentenced to a fifth degree felony . . . and he has already been imprisoned since the year 2011, and the maximum sentence for a fifth degree felony being one year, this Relator having served the maximum sentence that could be imposed for a fifth degree felony must entitle him to the writ of habeas corpus to issue forthwith.

(Doc. No. 20-1, Exh. 2 at PageID# 450.)

On April 25, 2017, the state appellate court issued a Judgment Entry requiring the State to file an Answer or Motion to Dismiss within 28 days from the date of the Entry.  (Doc. No. 20-1, Exh. 3.)

On May 1, 2017, the State filed a Motion to Dismiss, or Alternatively, for Summary Judgment.  (Doc. No. 20-1, Exh. 4.)  Hudson then filed his own Motion for Summary Judgment on May 15, 2017, to which the State responded.  (Doc. No. 20-1, Exhs. 5, 6.)

---

[5] Respondent failed to acknowledge or address Hudson's state court habeas Petition/ Complaint for Writ of Mandamus in the Return of Writ and, further, failed to include any of Hudson's filings relating thereto as part of the state court record.  On May 2, 2018, the undersigned ordered Respondent to supplement the state court record with all filings relating to Hudson's state court habeas Petition/Complaint for Writ of Mandamus. (Doc. No. 19.) Respondent supplemented the state court record accordingly on May 7, 2018.  (Doc. No. 20.)

On January 16, 2018, the state appellate court issued a decision denying Hudson's

Petitions.  *See State ex rel. Hudson v. Sloan*, 2018 WL 417582 (Ohio App. 11th Dist. Jan 16,

2018).  *See also* Doc. No. 20-1, Exh. 8.  Therein, the state appellate court found as follows:

{¶ 1} Relator, Anthony J. Hudson, alternatively seeks a writ of mandamus or writ of habeas corpus compelling respondent, Warden Brigham Sloan, to release him from prison.  We grant Sloan's motion for summary judgment as Hudson is not entitled to the requested relief.

{¶ 2} Mandamus is a writ issued to a public officer to perform an act "which the law specially enjoins as a duty resulting from an office."  R.C. 2731.01.  "For a writ of mandamus to issue, the relator must establish a clear legal right to the relief prayed for; the respondent must have a clear legal duty to perform the act; and the relator must have no plain and adequate remedy in the ordinary course of the law."  *State ex rel. Widmer v. Mohney*, 11th Dist. Geauga No. 2007–G–2776, 2008–Ohio–1028, ¶ 31, citing *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 80, 526 N.E.2d 786 (1988).

{¶ 3} In a writ of habeas corpus, the petitioner has the burden of proving his right to release from prison. *Chari v. Vore*, 91 Ohio St.3d 323, 325, 2001–Ohio–49, 744 N.E.2d 763. "[T]he petitioner must first introduce evidence to overcome the presumption of regularity that attaches to all court proceedings." (Citation omitted.) *Id*.

{¶ 4} Sloan moves for summary judgment and asks us to dismiss Hudson's petitions for habeas corpus and mandamus.  Hudson likewise moves for summary judgment seeking an order directing Sloan to release him from prison.

{¶ 5} Summary judgment is appropriate pursuant to Civ.R. 56 when the movant shows: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner*, 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123 (1993); *Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988).  The moving party bears the burden of proving no genuine issue of material fact exists.  *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

{¶ 6} Both Hudson's petition for a writ of mandamus and his petition for habeas corpus seek his release from prison based on our prior decision reversing and vacating his penalty enhancement and ordering the trial court to resentence him to the lowest level of the offense.  *State v. Hudson*, 11th Dist. Trumbull No.

2014–T–0097, 2017–Ohio–615, ¶ 40.   However, in so ruling, we relied on the Supreme Court's decision in *State v. Gonzales*, 150 Ohio St.3d 261, 2016–Ohio–8319, 81 N.E.3d 405, ¶ 22 reconsideration granted, decision vacated, 150 Ohio St.3d 276, 2017–Ohio–777, 81 N.E.3d 419, "*Gonzales I*." Thereafter, the Supreme Court reconsidered its decision in *Gonzales I* and did an about-face on the determinative issue. *State v. Gonzales*, 150 Ohio St.3d 276, 2017–Ohio–777, 81 N.E.3d 419, ¶ 3, reconsideration denied, 149 Ohio St.3d 1409, 2017–Ohio–2822, 74 N.E.3d 466, "*Gonzales II."*

{¶ 7} Thus, we reconsidered our decision and affirmed the trial court's decision in full based on *Gonzales II*.  Summary judgment in Sloan's favor is therefore warranted because Hudson is not entitled to release as a matter of law.  Hudson's motion for summary judgment is overruled.

*Id*.  As of the date of this Order, It does not appear Hudson appealed the state appellate court's decision.  *See* Doc. No. 20 at 2.

**D.     Federal Habeas Petition**

On August 28, 2017,[6] Hudson filed a Petition for Writ of Habeas Corpus in this Court and asserted the following ground for relief:

> **GROUND ONE**: Where the state court record establishes Petitioner is imprisoned without verdict, sentence, judgment or conviction without remedy for redress in the Ohio Courts such imprisonment should constitute a miscarriage of justice and violation of Petitioner's fundamental rights to due process of law and the equal protection under the laws mandating writ of habeas corpus issue where as here the maximum sentence Mr. Hudson could receive on re-sentencing hearing is one year which has already been served.

(Doc. 1.)

On November 22, 2017, Warden Brigham Sloan ("Respondent") filed his Return of Writ.

(Doc. No. 11.) Hudson filed a Traverse on December 11, 2017.  (Doc. No. 12.)  Respondent

---

[6]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until September 7, 2017, Hudson states he placed it in the prison mailing system on August 28, 2017.  (Doc. No. 1 at 4.)  Thus, the Court will consider the Petition as filed on August 28, 2017.

14

thereafter supplemented the state court record on January 3, 2018 (Doc. No. 14), January 19,

2018 (Doc. No. 16), and May 7, 2018 (Doc. No. 20.)

In addition, Hudson has filed a number of motions in the instant action.  Specifically, on

September 7, 2017, Hudson filed a "Motion for release on bond" (Doc. No. 3) and "Motion to

stay State Court proceedings until Federal Court Habeas Corpus Proceedings Adjudicated" (Doc.

No. 4.)  On October 11, 2017, Hudson filed a "Motion for Bail, Evidentiary Hearing, and

Appointment of Counsel."  (Doc. No. 6.)  On November 9, 2017, Hudson filed a "Renewed

Motion for Bond or Bail Evidentiary Hearing" (Doc. No. 10.)  Several days later, Hudson filed a

"Motion for Evidentiary Hearing."  (Doc. No. 13.)  Finally, on February 2, 2018, Hudson filed a

"Motion to Amend Petition in Interests of Justice" (Doc. No. 17) and "Motion for Court to

Judicially Notice Petitioner's Continued Imprisonment Notwithstanding *Gonzales II* Denies

Hudson's Federal Right of Liberty of 2/21/17" (Doc. No. 18.)

Respondent's only response was filed on October 27, 2017, in opposition to one of

Hudson's motions for bond.  (Doc. No. 9.)

### III. Motions

**A.**     **Motions for Release on Bail/Bond, for Evidentiary Hearing, and for Appointment of Counsel (Doc. Nos. 3, 6, 10, 13)**

In several of his pending motions, Hudson requests the Court grant him bail and/or bond.

(Doc. Nos. 3, 6, 10, 13.)  He argues the state appellate court found his conviction and sentence

were not supported by sufficient evidence and ordered him to be re-sentenced to a fifth degree

felony, which he asserts carries a maximum prison sentence of twelve months.  (Doc. No. 10 at

2.)  Hudson maintains he "has languished in jail and prison on insufficient evidence Federal

constitutional violation . . . for over six years from 2011" and notes "clearly the maximum

15

sentence of 12 months has been served by this petitioner invoking his right to Liberty on Bond until his hearing."  (*Id*.)  He further claims bond is justified due to the "irreparable harm" he suffers "by continued imprisonment notwithstanding he's served the maximum sentence and is no longer convicted of a crime."  (*Id*.)

To receive bond pending a decision on the merits of a habeas corpus petition, a petitioner must show a substantial claim of law based on the facts and exceptional circumstances justifying special treatment in the interest of justice.  *See Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir.1993) (quoting *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir.1990)).  *See also Aronson v. May,* 85 S.Ct. 3, 5, 13 L.Ed. 2d 6, 9 (1964)*; Nash v. Eberlin*, 437 F.3d 519, 526, n. 10 (6th Cir.2006).  "There will be few occasions where a habeas petitioner meets this standard."  *Dipofi v. Eichenlaub*, 2008 WL 2745143 at * 4 (E.D. Mich. July 14, 2008).  *See also Dotson*, 900 F.2d at 79; *Smith v. Bergh*, 2018 WL 1399321 at * 3 (E.D. Mich. March 19, 2018).

Hudson's Motions for Bond and/or Bail are denied.  For the reasons set forth *infra*, Hudson has not shown a "substantial claim of law based on the facts."  Nor has he demonstrated the existence of some circumstance making the motion for bail exceptional and deserving of special treatment in the interests of justice.  Accordingly, Hudson's Motions for Bond and/or Bail (Doc. Nos. 3, 6, 10) are DENIED.

Hudson also requests, summarily, this Court appoint counsel and conduct an evidentiary hearing.  (Doc. Nos. 6, 10, 13.)  A petitioner in a habeas proceeding generally has no constitutional right to counsel.  *See Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). However, a district court must appoint counsel for an indigent petitioner when an evidentiary

16

hearing is required or when necessary for the petitioner's effective utilization of discovery.[7]  *See* 28 U.S.C. § 2254 Rule 6(a) (2014).  In all other circumstances, the court has considerable discretion in deciding whether to appoint counsel.[8]  In deciding whether to grant a petitioner's motion for appointment of counsel, a court should consider the following factors: (1) whether the merits of the claim are colorable; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) the capability of the indigent to present the case; and (5) the complexity of the legal issues raised by the complaint.  *See Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992).  *See also Ruffin v. Lazaroff*, 2016 WL 7974123 at * 16 (N.D. Ohio Nov. 1, 2016).

Hudson does not offer any specific reasons why he believes he is entitled to appointment of counsel.  He does not assert he labors under disabilities unusual for a *pro se* petitioner; nor are the issues raised in his Petition unusually complex.  Moreover, the Court is not persuaded an evidentiary hearing is warranted under the circumstances presented.  To the contrary, and upon careful review, the Court finds Hudson's Petition involves legal issues which can be independently resolved without additional factual inquiry.  Accordingly, Hudson's motions for

---

[7]  In addition, an indigent petitioner seeking to vacate or to set aside a death sentence has a statutory right to appointed counsel, as well as expert and investigative services. 18 U.S.C. § 3599(a)(2). Here, however, Hudson is not seeking to vacate or set aside a death sentence.

[8] *See* 28 U.S.C. § 2254(h) ("Appointment of counsel under this section shall be governed by section 3006A of title 18."). 18 U.S.C. § 3006A(a)(2)(B) provides in part: "Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under [§ 2254]."

17

appointment of counsel and for an evidentiary hearing (Doc. Nos. 6, 10, 13) are DENIED.

For all the reasons set forth above, Hudson's "Motion for release on bond" (Doc. No. 3); "Motion for Bail, Evidentiary Hearing, and Appointment of Counsel."  (Doc. No. 6); "Renewed Motion for Bond or Bail Evidentiary Hearing" (Doc. No. 10); and "Motion for Evidentiary Hearing" (Doc. No. 13) are DENIED.

## B.        Motion to Stay State Court Proceedings (Doc. No. 4)

In his motion to stay, Hudson asks the Court to "stay pending state court proceedings until these habeas corpus proceedings are concluded."  (Doc. No. 4.)  The entirety of his motion is as follows:

> The state of Ohio cases for stay originate in the City of Warren, Trumbull County, Ohio's Court of Appeals case STATE V. ANTHONY J. HUDSON, 2014-T-0097; ANTHONY J. HUDSON V. BRIGHAM, SLOAN, WARDEN, 2017-TR-30, and lastly STATE V. ANTHONY J. HUDSON, (Common Please Court) Case No. 2011 CR 0073.  And for this stay he prays speedy justice in the name of God.

(*Id*. at 1.)

Hudson's "Motion to Stay State Court Proceedings" is denied.  As an initial matter, there do not appear to be any pending matters in any of the above state court cases.  The first case cited, *State v. Hudson*, Case No. 2014-T-097, is Hudson's direct appeal from his September 2014 conviction and sentence.  In that case, the state appellate court affirmed Hudson's conviction and sentence on January 16, 2018 and issued a mandate the following day.  As of the date of this Order, no appeal has been filed and there are no pending motions listed on the docket sheet for Case No. 2014-TR-097.

The second case, *State ex. rel. Hudson v. Sloan*, Case No. 2017 -TR-30, is Hudson's state court Petition for Habeas Corpus and Complaint for Writ of Mandamus.  As noted *supra*, the

18

state appellate court denied Hudson's Petitions on January 16, 2018 and no appeal has been filed. (Doc. No. 20 at 2; Doc. No. 20-1, Exhs. 8, 9.)  As of the date of this Order, there are no pending motions listed on the docket sheet for Case No. 2017-TR-30.

Finally, the third case, *State v. Hudson*, Case No. 2011-CR-073 is Hudson's underlying state court criminal case.  The last docket entry in that action is the mandate issued by the state appellate court on January 17, 2018, affirming Hudson's conviction and sentence.  As of the date of this Order, the docket does not reflect any appeal from the state appellate court decision and/or any pending post-conviction motions in Case No. 2011-CR-073.[9]

In light of the above, Hudson's motion is moot, as there is nothing pending in his state court proceedings for this Court to "stay."  Moreover, even if there were pending matters in one or more of Hudson's state court proceedings, Hudson's motion is without merit.  Hudson offers no explanation as to why he believes his state court proceedings should be stayed and cites no legal authority for the proposition that it would be appropriate for the Court to do so under the circumstances presented.

Accordingly, Hudson's "Motion to Stay State Court Proceedings" (Doc. No. 4) is DENIED.

**C.**   **"Motion for Court to Judicially Notice Petitioner's Continued Imprisonment Notwithstanding Gonzales II Denies Hudson's Federal Right of Libert of 2/21/17" (Doc. No. 18)**

---

[9] While the State's Motion to Continue Sentencing Hearing (filed March 1, 2017) does not appear to have been ruled on by the state trial court, the docket sheet for that case indicates the re-sentencing hearing is marked as "not necessary." (Doc. No. 11-1, Exh. 26.) Morever, the State's motion is clearly now moot in light of the state appellate court decision affirming Hudson's conviction and sentence.

In his "Motion for Court to Judicially Notice Petitioner's Continued Imprisonment," Hudson asks this Court to take "judicial notice" that: (1) he was "ordered released for 14th amendment violation of insufficient evidence on 2/21/17;" (2) Respondent then "refused to transfer Hudson to trial court . . . , again denying Hudson's right to Liberty;" and (3) the state trial court refused to conduct a re-sentencing hearing "notwithstanding the [state appellate court's] MANDATE to release [him]."  (Doc. No. 18.)  Finally, Hudson asks the Court to take judicial notice that he "has languished in prison without process or remedy for 11 months to obtain his Federal Right to Liberty above granted prior to *Gonzales II*, now Respondent seek reward of UNLAWFUL - imprisonment despite the SUBSTANTIVE DUE PROCESS RIGHTS above."  (*Id.*)

Hudson's "Motion for Court to take Judicial Notice" is denied.  In his motion, Hudson simply re-argues the issues raised in his Petition and Traverse.  The Court will not take "judicial notice" that the state trial court improperly refused to re-sentence him or that he has "languished in prison without process or remedy for 11 months."  As set forth *infra*, the Court has fully considered and reviewed Hudson's arguments in the context of reviewing the Petition, Return, and Traverse as a whole.

Accordingly, Hudson's "Motion for Court to Take Judicial Notice" (Doc. No. 18) is DENIED.

**D.      Motion to Amend (Doc. No. 17)**

In his Motion to Amend, Hudson seeks to amend his Petition to assert the following ground for relief:

> The Petitioner's Fundamental Right to be free of Double Jeopardy are violated here where the State court reversed his conviction and sentence based on insufficient

20

evidence via 14th Amend., and now seeks to reenter conviction and sentence, the Ohio Court submits in this Federal Court an error was made in evaluating the evidence and law, Petitioner submits his continued imprisonment denies Double Jeopardy.

(Doc. No. 17 at 1.)  Hudson asserts this claim is "raised late" in these habeas proceedings because "after the Petitioner has been imprisoned since [the state appellate court's decision dated] 2/21/2017 without verdict, judgment or sentence, the State Court now arbitrarily submits it has issued a judgment to imprison Hudson on January 16, 2018 . . . reversing the insufficiency of evidence determination of 2/21/2017."  (*Id.*)

Hudson first maintains "the so-called new judgment of conviction does not reverse the federal insufficiency evidence determination of 2/21/2017."  (*Id.*)  However, Hudson argues that, if this Court finds the state appellate court's January 16, 2018 opinion affirming his conviction and sentence does, in fact, vacate that court's February 21, 2017 opinion reversing and remanding for re-sentencing, "he now possessed the right to Liberty for federal double jeopardy." (*Id.* at 1-2.)

It is well established that Rule 15 of the Federal Rules of Civil Procedure applies to a habeas petitioner's request for leave to amend his petition.  *Mayle v. Felix*, 545 U.S. 644, 655 (2005).  *See also Glenn v. Coleman*, 2014 WL 4983661 at * 5 (N.D. Ohio Oct. 6, 2014); *Shank v. Mitchell*, 2013 WL 3208554 at *3 (S.D. Ohio June 24, 2013).  Under Rule 15(a), a party may amend his or her pleadings once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading.  Fed. R. Civ. P. 15(a).  Otherwise, the party may amend only with the opposing party's written consent or by leave of court, which "shall be freely given when justice so requires."  *Id.  See also Mayle*, 545 U.S. at 655.

21

As Respondent filed his Answer/Return of Writ on November 22, 2017, leave of court must be obtained before Hudson may amend his Petition.  In determining whether leave should be granted, a habeas court should consider several factors, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment."  *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994.))  *See also Powers v. Beightler*, 2010 WL 649623 at * 1 (N.D. Ohio Feb. 19, 2010).  If a proposed amendment lacks merit on its face, it is deemed futile.  *See e.g., Moss v. United States*, 323 F.3d 445, 475 (6th Cir. 2003).  *See also Clark v. Ohio Adult Parole Authority,* 2017 WL 495508 at * 6 (S.D. Ohio Feb. 6, 2017); *Brown v. Clipper*, 2016 WL 5173331 at * 20 (N.D. Ohio Sept. 21, 2016); *Soler-Norona v. Brewer*, 2018 WL 1964677 at * 1 (E.D. Mich. April 26, 2018).  In the Sixth Circuit, leave to amend a pleading may be denied on grounds of futility only if the amended pleading would not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Kottmyer v. Maas*, 436 F.3d 684, 691–92 (6th Cir. 2006); *Hall v. Clipper*, 2011 WL 2671310 at * 11 (N.D. Ohio July 8, 2011).

Here, Hudson seeks to amend his Petition to assert a claim that his right to be free from Double Jeopardy under the Fifth Amendment of the United States Constitution was violated when the state appellate court reconsidered and vacated its February 21, 2017 decision reversing his penalty enhancement and remanding for re-sentencing.  For the following reasons, Hudson's Motion to Amend is denied as futile.

As an initial matter, the Court finds Hudson has not demonstrated he exhausted this claim in state court.  Habeas petitioners must exhaust their state remedies prior to raising claims in

22

federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  Exhaustion requires "fair presentation" of the federal claim "to the state courts, including the state court of appeals and the state supreme court."  *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir.2011) (brackets omitted); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  To fairly present a federal claim, a state prisoner is required to present the state courts with "both the *legal* and factual basis" for the claim.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (emphasis in original); *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015).  "If a prisoner failed to exhaust his or her state court remedies and state law would no longer permit the petitioner to raise the claim when he or she files a petition for habeas relief in federal court, the claim is procedurally defaulted."  *Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012).  A petitioner may overcome default by showing "cause" and "prejudice" for failing to exhaust.  *Id.*

Here, Hudson did not argue, in his state court Amended Habeas Petition/Complaint for Writ of Mandamus, that the state appellate court's January 16, 2018 decision constituted a violation of his Double Jeopardy rights.  (Doc. No. 20-1, Exh. 2.)  Moreover, even if his state court Amended Habeas Petition/Complaint for Writ of Mandamus could be liberally construed as asserting a Double Jeopardy claim, Hudson did not appeal the denial of his Petition/Complaint for Mandamus to the Supreme Court of Ohio.  (Doc. No. 20 at 2; Doc. No. 20-1, Exh. 9.) Finally, Hudson has not argued there is a mechanism under state law for him to now exhaust this

claim in the state courts.[10]  Thus, the Court finds it would be futile to allow Hudson to amend his Petition to assert his proposed Double Jeopardy claim because it was not fairly presented to the state courts and is unexhausted.

In addition, the Court finds leave to amend would be futile because Hudson's claim lacks merit on its face.  The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  *See Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).  "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.' " *Volpe v. Trim*, 708 F.3d 688, 695-696 (6th Cir. 2013) (quoting *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (internal quotations omitted).  *See also Smith v. Coleman*, 521 Fed. Appx. 444, 448 (6th Cir. 2013); *Bibbs v. Bunting*, 2017 WL 4083558 at *15 (N.D. Ohio May 17, 2017).

---

[10] Hudson does not argue state law would allow him to file either a motion for delayed appeal from the state appellate court's decision denying his state court habeas Petition/ Complaint for Writ of Mandamus, or a successive habeas petition in the state appellate court. Indeed, it appears state law prevents Hudson from pursuing these avenues of relief.  *See* Ohio S.Ct. Prac. R. 7.01(A)(4)(c)("The provision for delayed appeal does not apply to appeals involving post-conviction relief. . . ); *Hudlin v. Alexander*, 63 Ohio St .3d 153, 155–156, 586 N.E.2d 86 (1992) (holding *res judicata* is applicable to successive habeas corpus petitions because habeas corpus petitioners have the right to appeal adverse judgments in habeas corpus cases).  In addition, Hudson has not argued he could now raise this claim in a motion for delayed appeal from the state appellate court's January 16, 2018 direct appeal decision affirming his conviction and sentence.  Moreover, even if this remedy were available, Hudson has not asked for a stay of the instant proceedings to allow him to do so, nor has he made any showing of good cause for his failure to exhaust his state court remedies with respect to his proposed Double Jeopardy claim.

Hudson cannot show that any of these circumstances apply in the instant case. Specifically, the Court finds Hudson was not "prosecuted for the same offense" twice, nor was he subject to "multiple punishments" for the same offense.  Rather, and as set forth in detail *supra*, Hudson was prosecuted, tried before a jury, and convicted on the charge of cocaine possession only once, in *State v. Hudson*, Trumbull County Court of Common Pleas Case No. 2011-CR-073. While the state appellate court issued a direct appeal decision in February 2017 vacating his penalty enhancement and ordering him re-sentenced to a fifth degree (as opposed to first degree) felony, that court stayed its February 2017 decision until proceedings in *Gonzales II* were concluded.  (Doc. No. 11-1, Exh. 23.)  Further, the record reflects, although the state trial court initially scheduled a re-sentencing hearing, it did not conduct that hearing once the appellate court stayed its February 2017 decision.[11]  (Doc. No. 11-1, Exh. 26.)

After the Ohio Supreme Court issued its decision in *Gonzales II*, the state appellate court lifted the stay, granted the State's Application for Reconsideration, and vacated its February 2017 decision.  (Doc. No. 14-1.)  Shortly thereafter, on January 16, 2018, the state appellate court issued a new decision, affirming Hudson's conviction and sentence.  (Doc. No. 16-1.)  The docket reflects the state appellate court then issued a mandate on January 17, 2018 that Hudson's conviction and sentence were affirmed.  *See* Docket for *State v. Hudson*, Trumbull County Court of Common Pleas, Case No. 2011 CR 00073.  As of the date of this Order, Hudson has not filed an appeal from the state appellate court's decision.  Throughout this time period, Hudson was not re-sentenced and, instead, continued to remain in custody pursuant to the state trial court's September 2014 judgment entry imposing a ten (10) year prison sentence.

---

[11] It is indisputed the state trial court never resentenced Hudson.

In light of the above, Hudson cannot show he was subject to a second prosecution, or received multiple punishments, for the same offense. Accordingly, the Court finds allowing Hudson to amend his Petition to include his proposed Double Jeopardy claim would be futile for the additional reason that such claim lacks merit on its face.

Therefore, and for all the reasons set forth above, Hudson's Motion to Amend (Doc. No. 17) is DENIED.

## IV. Petition

### A. Standard of Review

Prior to addressing Hudson's sole ground for relief, the Court notes Hudson filed his Petition pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) He argues his Petition "should be governed via 28 U.S.C. § 2241 as invoke[d] because Mr. Hudson is imprisoned on something other than a State Court judgment." (Doc. No. 12 at 1, 7.) Specifically, Hudson claims that, because he is imprisoned without a valid state court judgment, 28 U.S.C. § 2254 does not apply to the instant Petition. (*Id*. at 7.)

Respondent fails entirely to acknowledge or address this issue. In the Return, Respondent asserts summarily that "Hudson has brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. Section 2254" (Doc. No. 11 at 1, 9), and applies the standards for review applicable to § 2254 petitions as set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA") (Doc. No. 11 at 9-20.)

Congress' general grant of habeas authority to the federal courts appears in 28 U.S.C. § 2241, which extends the writ to, among others, persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). One section of the

habeas statute—section 2254—concerns habeas relief available to a subset of petitioners: those "in custody pursuant to the judgment of a State court. " 28 U.S.C. § 2254(a) (emphasis added). *See Phillips v. Court of Common Pleas, Hamilton County, Ohio*, 668 F.3d 804, 809 (6th Cir. 2012). The Sixth Circuit has emphasized, however, that § 2254 applies to those petitioners in custody pursuant to a *judgment* of a state court, while § 2241 is available to petitioners who are pretrial detainees in custody pursuant to a state court *indictment*. *Id. See also Girts v. Yanai*, 600 F.3d 576, 587 (6th Cir.2010); *Atkins v. Michigan*, 644 F.2d 543, 546 n. 1 (6th Cir.1981).

The question of whether § 2241 or § 2254 governs this action is important because, as the Sixth Circuit has noted, "our review of state court decisions differs significantly depending on which section of the habeas statute applies." *Phillips*, 668 F.3d at 809-810. As that court explained:

> For habeas petitions filed under § 2254, we may not grant relief on the basis of an incorrect factual determination by a state court unless the determination was "unreasonable ... in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). And where habeas relief under § 2254 is predicated on a state court's alleged misapplication of the law to the facts, federal relief is prohibited unless the application of Supreme Court precedent was "unreasonable." *Id*. § 2254(d)(1). Congress imposed these standards when it passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and they are intended to be difficult to meet. *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011).

> The standards that apply to § 2241 petitions, by contrast, are significantly less demanding. The First, Fifth, Ninth, and Tenth Circuits have concluded that the deference that § 2254(d) requires never applies to habeas petitions brought by pretrial detainees under § 2241, and no circuit to our knowledge has held otherwise. *See Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir.2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir.2007); *Stow v. Murashige*, 389 F.3d 880, 885–86 (9th Cir.2004); *Gonzalez v. Justices of Mun. Ct. of Boston*, 382 F.3d 1, 6–7 (1st Cir.2004), judgment vacated on other grounds, 544 U.S. 918, 125 S.Ct. 1640, 161 L.Ed.2d 474 (2005). As the Fifth Circuit recently stated in *Martinez*, "[t]he deferential standard afforded to state court decisions, which is specifically articulated in § 2254, is not included in the text of § 2241." 644 F.3d

27

at 242.  Furthermore, AEDPA significantly amended § 2254(d) but left untouched § 2241, and courts operate on the assumption that "'Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.' " *Id.* (quoting *City of Chicago v. Environmental Def. Fund*, 511 U.S. 328, 338, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994)).  We agree with our sister circuits and hold that habeas petitions governed by § 2241 are not subject to the heightened standards contained in § 2254(d). [footnote omitted].  Accordingly, we must conduct a *de novo* review of the state court proceedings in addressing Phillips's petition.  *See Martinez*, 644 F.3d at 242; *Walck*, 472 F.3d at 1235.

*Phillips*, 668 F.3d at 810.  *See also Donaldson v. Bova*, 552 Fed. Appx. 554, 559 (6th Cir. 2014);

*Parker v. Stewart*, 2017 WL 3531390 at * 3-4 (E.D. Mich. Aug. 17, 2017).

Here, the Court finds Hudson was "in custody pursuant to the judgment of a state court" at the time he filed his Petition and, therefore, this action is governed by § 2254.  Although the state appellate court issued a decision in February 2017 vacating Hudson's penalty enhancement and remanding for re-sentencing, that court subsequently stayed its decision (on March 1, 2017) pending resolution of the *Gonzales* case.  (Doc. No. 11-1, Exh. 23.)  After the Ohio Supreme Court decided *Gonzales II*, the state appellate court lifted the stay, vacated its February 2017 decision, and issued a new opinion affirming Hudson's conviction and sentence.  Because the decision vacating Hudson's penalty enhancement was stayed and the state trial court did not re-sentence Hudson to a lesser degree felony, the Court finds Hudson was, at all times relevant hereto (including when he filed his Petition in August 2017), in custody pursuant to a "judgment" of the state court.[12]

---

[12] The fact Hudson purported to file his petition under 28 U.S.C. § 2241 is not determinative, as "a petitioner cannot forfeit or waive the standards that apply to habeas petitions." *Phillips*, 668 F.3d at 809 n. 1.  *See also Fisher v. Rose*, 757 F.2d 789, 792 n. 2 (6th Cir.1985); *Smith v. Coleman*, 521 Fed. Appx. 444, 447 (6th Cir. 2013).

Accordingly, the Court finds § 2254, with its deferential standard, applies to this case.[13]

**B.  Ground One**

In his sole ground for relief, Hudson argues his due process and equal protection rights have been violated because he is "imprisoned by the Warden, notwithstanding the fact the State of Ohio possessed no judgment of sentence."  (Doc. No. 1 at 1.)  He claims the state appellate court's February 2017 decision vacated his conviction and sentence and asserts the state trial court's refusal to re-sentence him to a fifth degree felony constitutes a "miscarriage of justice." (Doc. No. 12 at 4.)  Hudson argues this Court should not deny him habeas relief based on the Supreme Court of Ohio's decision in *Gonzales II* because his "judgment of conviction or sentence were vacated . . . and not reimposed."  (*Id*. at 5.)  Finally, Hudson argues the state appellate court's January 16, 2018 decision affirming his conviction and sentence "does not overrule the finding on the Original judgment of February 21, 2017."  (Doc. No. 15 at 3.)

Respondent argues this claim should be dismissed because Hudson "has never fairly presented this claim to the Ohio Courts."  (Doc. No. 11 at 15.)  Specifically, he asserts Hudson failed to raise this claim on direct appeal and, therefore, this claim should be dismissed as unexhausted and/or procedurally defaulted.  (*Id*. at 15-16.)  In the alternative, Respondent argues Hudson's claim should be dismissed as without merit.  (*Id*. at 17-20.)  He maintains Hudson has, in fact, been convicted "based on a verdict, sentence, and judgment," and asserts "his sentencing entry, which is still in effect, sentences him to ten years."  (*Id*. at 17.)

---

[13] Assuming *arguendo* Hudson properly brought this action under § 2241, the Court finds he would nevertheless not be entitled to relief under *de novo* review for the reasons set forth *infra*.

The Court will address the parties' procedural and substantive arguments in turn, below.

### 1.    Exhaustion and Procedural Default

As noted above, Respondent first argues Hudson's sole habeas claim should be dismissed as unexhausted and/or procedurally defaulted because he failed to fairly present it to the state courts.  (Doc. No. 11 at 15-17.)  In his Traverse, Hudson asserts he "has in fact raised the Federal Constitutional Violations seen in Ground One in the State Court for redress via State Writ of Habeas Corpus/Mandamus Complaint."  (Doc. No. 12 at 7.)

"[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.' " *Anderson*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 847).  To avoid procedural default, the petitioner must "exhaust" all state-court remedies.  *See Williams*, 792 F.3d at 613; *Carter*, 693 F.3d at 563–64.  As noted *supra*, exhaustion requires "fair presentation" of the federal claim "to the state courts, including the state court of appeals and the state supreme court." *Bray*, 640 F.3d at 734–35; *see O'Sullivan*, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  To fairly present a federal claim, a state prisoner is required to present the state courts with "both the *legal* and factual basis" for the claim.  *See Anderson*, 460 F.3d at 806 (emphasis in original); *Williams*, 792 F.3d at 613.  "If a prisoner failed to exhaust his or her state court remedies and state law would no longer permit the petitioner to raise the claim when he or she files a petition for habeas relief in federal court, the claim is procedurally defaulted."  *Carter*, 693 F.3d at 564.  A petitioner may overcome default by showing "cause" and "prejudice" for failing to exhaust.  *Id.*

30

Here, the record reflects Hudson filed an Amended Petition for Habeas Corpus/Complaint for Writ of Mandamus in the state appellate court on April 12, 2017.  (Doc. No. 20-1, Exh. 2.)  Therein, he argues he is "seeking justice via the . . . United States Constitution Amendments 1st, 5th, 6th, 14th because [he] remains imprisoned by the Warden in spite of the fact the Mandate issued by this Appellate Court 2/21/17 in Case No. 2014-T-0097" reversed his penalty enhancement and remanded for re-sentencing.  (*Id*.)  Hudson further maintains "[t]he United States Supreme Court and the Ohio Supreme Court have ruled no State has the power to imprison the Relator without sentence or conviction, as the mandate of this Appellate Court dated 2/21/17 shows."  (*Id*.)   In an Affidavit attached to his state court Amended Habeas Petition/Complaint in Mandamus, Hudson expressly references substantive and procedural due process.  (Doc. No. 20-1, Exh. 2.)

On January 16, 2018, the state appellate court issued a decision denying Hudson's Petitions.  *See State ex rel. Hudson v. Sloan*, 2018 WL 417582 (Ohio App. 11th Dist. Jan 16, 2018).  *See also* Doc. No. 20-1, Exh. 8.  Therein, the state appellate court found Hudson was not entitled to release as a matter of law.  *Id*.  As of the date of this Order, it does not appear Hudson appealed the state appellate court's decision to the Supreme Court of Ohio.

Based on the above, the Court finds Hudson presented Ground 1 herein to the state appellate court, but then failed to exhaust this claim when he did not timely appeal the state appellate court's January 16, 2018 decision denying his Amended Habeas Petition/Complaint of Writ of Mandamus to the Supreme Court of Ohio.  Moreover, Hudson has not argued there are any remedies available under state law to permit him to exhaust this claim.  *See Nali v. Phillips*, 681 F.3d 837, 852 (6th Cir. 2012) ("The petitioner bears the burden of showing that state court

remedies have been exhausted."); *Coleman v. Gidley*, 2017 WL 7370569 at * 1 (6th Cir. 2017).

Specifically, Hudson does not argue state law would allow him to file either a motion for delayed

appeal from the state appellate court's decision denying his state court Amended Habeas

Petition/Complaint for Writ of Mandamus in the Supreme Court of Ohio, or a successive  habeas

petition in the state appellate court.  If fact, it appears state law prevents Hudson from pursuing

these avenues of relief.  *See* Ohio S.Ct. Prac. R. 7.01(A)(4)(c)("The provision for delayed appeal

does not apply to appeals involving post-conviction relief. . . ); *Hudlin*, 63 Ohio St .3d at

155–156 (holding *res judicata* is applicable to successive habeas corpus petitions because habeas

corpus petitioners have the right to appeal adverse judgments in habeas corpus cases).[14]  Because

Hudson failed to exhaust his state court remedies with respect to this claim (with respect to the

denial of his state court Amended Habeas Petition/Complaint for Writ of Mandamus), and it does

not appear state law would permit him to do so, it is recommended the Court find Hudson's sole

ground for relief herein is procedurally defaulted.  *Carter*, 693 F.3d at 564.

As noted above, a habeas petitioner may overcome default by showing "cause" and

"prejudice" for failing to exhaust.  "Demonstrating cause requires showing that an 'objective

---

[14]  As noted *supra*, Hudson has not argued he could now raise this claim in a motion for
delayed appeal from the state appellate court's January 16, 2018 direct appeal decision
affirming his conviction and sentence.  Moreover, even if this remedy were available, Hudson
has not asked for a stay of the instant proceedings to allow him to do so, nor has he
made any showing of good cause for his failure to exhaust his state court remedies with
respect to the Due Process and Equal Protection claims raised herein in Ground 1.  Indeed,
Hudson offers no explanation for failing to timely appeal either the state appellate court's
January 16, 2018 direct appeal decision, or that court's decision denying his state habeas
Petition/Complaint for Writ of Mandamus.  Accordingly, to the extent this claim may be
unexhausted (as unopposed to procedurally defaulted), dismissal is nonetheless appropriate
because Hudson has not requested, or shown he is entitled to, a stay of the instant
proceedings.

factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

A petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

Here, although Respondent expressly raised the issue of default in the Return (Doc. No. 11 at 16, fn 5), Hudson has not argued there is cause or prejudice to excuse the default.  Nor has he argued he is "actually innocent."  Accordingly, and for all the reasons set forth above, it is

recommended Hudson's sole ground for relief be dismissed as unexhausted and procedurally defaulted.[15]

### 2.    Merits

In the alternative, Respondent argues Ground 1 is without merit because the state appellate court stayed its February 2017 decision and then vacated it and issued a decision on January 16, 2018 affirming Hudson's conviction and sentence in full.  (Doc. No. 11 at 17-20.) Thus, Respondent argues that, throughout the relevant time period, Hudson has always been held in custody pursuant to a valid, state court judgment.  (*Id.*)

Hudson argues he is entitled to habeas relief because, regardless of the Ohio Supreme Court's decision in *Gonzales II,* his "judgment of conviction or sentence were vacated . . . and not reimposed."  (Doc. No. 12 at 5.)  He insists the state appellate court's January 16, 2018 decision affirming his conviction and sentence "does not overrule the finding on the Original judgment of February 21, 2017" and, therefore, he is subject to immediate release because he has already served well more than the maximum sentence (12 months) for the offense of fifth degree felony cocaine possession.   (Doc. No. 15 at 3.)

As noted *supra*, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337

---

[15] Assuming *arguendo* this matter was governed by § 2241, Hudson's Petition would nonetheless be subject to dismissal for failure to exhaust his state court remedies.  *See e.g., Phillips*, 668 F.3d at fn 4 ("Unlike exhaustion under § 2254, exhaustion under § 2241 is not a statutory requirement . . . . Rather, in the § 2241 context, 'decisional law has superimposed such a requirement in order to accommodate principles of federalism.'" )(citations omitted). *See also Smith v. Ohio*, 2018 WL 400318 at * 2 (N.D. Ohio Jan. 9, 2018) ("[E]ven Petitioners proceeding under § 2241 'must exhaust all available state court remedies before proceeding in federal court, and this usually requires that they appeal an adverse decision all the way to the state's court of last resort.'") (citing *Phillips*, 668 F.3d at 810).

(1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, ––– U.S. ––––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

35

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation

36

marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

Here, the last state court decision to consider Hudson's argument was the state appellate court's January 16, 2018 decision denying his state habeas Petition/Complaint for Writ of Mandamus.  *See State ex rel. Hudson v. Sloan*, 2018 WL 417582 (Ohio App. 11th Dist. Jan 16, 2018).  That court found as follows:

> {¶ 6} Both Hudson's petition for a writ of mandamus and his petition for habeas corpus seek his release from prison based on our prior decision reversing and vacating his penalty enhancement and ordering the trial court to resentence him to the lowest level of the offense.  *State v. Hudson*, 11th Dist. Trumbull No. 2014–T–0097, 2017–Ohio–615, ¶ 40.  However, in so ruling, we relied on the Supreme Court's decision in *State v. Gonzales*, 150 Ohio St.3d 261, 2016–Ohio–8319, 81 N.E.3d 405, ¶ 22 reconsideration granted, decision vacated, 150 Ohio St.3d 276, 2017–Ohio–777, 81 N.E.3d 419, "*Gonzales I*."  Thereafter, the Supreme Court reconsidered its decision in *Gonzales I* and did an about-face on the determinative issue.  *State v. Gonzales*, 150 Ohio St.3d 276, 2017–Ohio–777, 81 N.E.3d 419, ¶ 3, reconsideration denied, 149 Ohio St.3d 1409, 2017–Ohio–2822, 74 N.E.3d 466, "*Gonzales II."*

> {¶ 7} Thus, we reconsidered our decision and affirmed the trial court's decision in full based on *Gonzales II*.  Summary judgment in Sloan's favor is therefore warranted because Hudson is not entitled to release as a matter of law.  Hudson's motion for summary judgment is overruled.

*Id*.

For the following reasons, it is recommended the Court find Ground 1 to be without merit.  It is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  As such, the Supreme Court

has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions."  *Id*. at 67-68.  *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Stated another way, a state court's interpretation of state law is binding upon a federal habeas court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Bibbs v. Bunting*, 2017 WL 4083558 at * 15 (N.D. Ohio May 17, 2017).  *See also Thompson v. Williams*, 685 F.Supp.2d 712, 721 (N.D. Ohio 2010) (stating "a federal court may not second-guess a state court's interpretation of its own procedural rules.") (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988)).

Here, the state appellate court determined Hudson was not entitled to immediate release as a matter of law because the Eighth District Appellate Court stayed its February 2017 decision reversing Hudson's penalty enhancement, and then vacated it entirely and issued a new opinion on reconsideration that affirmed Hudson's conviction and sentence in full on the basis of *Gonzales II*.  To the extent Hudson asserts the state appellate court erred in interpreting state procedural rules regarding the effect and/or propriety of the stay and subsequent vacation of the February 2017 decision (or the state trial court's failure to re-sentence him), it is recommended the Court finds such arguments relate solely to an issue of state law and are not cognizable in these federal habeas proceedings.

To the extent Hudson asserts a violation of his due process and/or equal protection rights, it is recommended the Court find this argument(s) to be without merit.  Although Hudson refers to the United States Constitution and Due Process Clause, he fails to cite any legal authority demonstrating the state appellate court's reconsideration and vacation of its February 2017 decision violates federal constitutional law.  As has been discussed at length above, the state

38

appellate court reconsidered and vacated its February 2017 decision because of a change in controlling law on a key issue in Hudson's case; i.e., whether Ohio Rev. Code § 2925.11(C)(4)(e) does or does not include the weight of the actual cocaine along with any filler materials to determine whether the statutory threshold has been met.  Because the Ohio Supreme Court changed its position on that very issue in *Gonzales II* and found the offense level for cocaine possession under § 2925.11(C)(4)(e) is determined by the total weight of the drug involved (including any fillers), the state appellate court determined it was bound to vacate its February 2017 decision and issue a new decision affirming Hudson's conviction and sentence in full.  *See State v. Hudson*, 2018 WL 417581 at * 3-4 (Ohio App. 11th Dist. Jan. 16, 2018).  Hudson fails to direct this Court's attention to any legal authority suggesting the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. [16]

Accordingly, and for all the reasons set forth above, it is recommended Ground 1 be denied as without merit.

## V. Conclusion

For all the reasons set forth above, Hudson's "Motion for release on bond" (Doc. No. 3); "Motion to stay State Court proceedings until Federal Court Habeas Corpus Proceedings Adjudicated" (Doc. No. 4); "Motion for Bail, Evidentiary Hearing, and Appointment of Counsel" (Doc. No. 6); "Renewed Motion for Bond or Bail Evidentiary Hearing" (Doc. No. 10); "Motion for Evidentiary Hearing" (Doc. No. 13);  "Motion to Amend Petition in Interests of Justice" (Doc.

---

[16] Even if this Court were to consider this claim under *de novo* review (pursuant to either § 2241 or § 2254), it would find it to be without merit.  Hudson has not directed this Court's attention to any authority suggesting the state appellate court's decision to stay its February 2017 order, and then vacate it based on the outcome of *Gonzales II*, violated either his due process and/or equal protection rights.

No. 17);  and  "Motion for Court to Judicially Notice Petitioner's Continued Imprisonment

Notwithstanding *Gonzales II* Denies Hudson's Federal Right of Liberty of 2/21/17" (Doc. No. 18)

are DENIED.

      In addition, the undersigned recommends the Petition be DISMISSED.

Date:   May 11, 2018             *s/ Jonathan Greenberg*

                                      Jonathan D. Greenberg
                                      United States Magistrate Judge

## OBJECTIONS

      **Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**